**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 18-2337
_____

UNITED STATES OF AMERICA

v.

GREGORY MILLER,
                                    Appellant
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. No. 1:12-cr-00325-001)
District Judge:  Hon. Robert B. Kugler

Submitted Under Third Circuit L.A.R. 34.1(a)
January 23, 2019

Before:  CHAGARES and BIBAS, *Circuit Judges*, and SÁNCHEZ,[*] *Chief District Judge*.

(Filed: March 15, 2019)
_____

OPINION[**]
_____

[*] The Honorable Juan R. Sánchez, Chief District Judge of the United States District Court for the Eastern District of Pennsylvania, sitting by designation.

[**] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

SÁNCHEZ, *Chief District Judge*.

Gregory Miller appeals the District Court's judgment revoking a term of supervised release and imposing a sentence of fourteen months. The District Court revoked Miller's supervised release after it found he violated the condition of his release requiring residence at a re-entry facility for eight months. Miller was prematurely discharged from the facility for violating a rule prohibiting unaccounted for medication after eight Oxycodone pills went missing from his prescription bottle while the bottle was in his custody and control. Miller claims the evidence presented at the violation of supervised release hearing was insufficient to support the District Court's finding that Miller was responsible for the missing pills. Because the District Court had sufficient evidence to support its conclusion, we will affirm.

I.

In 2012, Miller was convicted of bank robbery and sentenced to 84 months of imprisonment and 3 years of supervised release. His term of supervised release began on March 1, 2017. On April 23, 2018, Miller was arrested and detained for ignoring his probation officer's directives. On May 1, 2018, he pleaded guilty to failing to answer his probation officer's inquiries and follow instructions. His supervised release was revoked, and he was sentenced to one month of imprisonment and one year of supervised release with a special condition that he reside for eight months in a Residential Re-entry Center (RRC).

On May 21, 2018, Miller was released to his designated RRC. Nine days later, on May 30, 2018, Miller's probation officer filed a petition to revoke Miller's supervised

release, alleging that Miller violated the terms of his release because he was discharged from the RRC for failure to account for eight Oxycodone pills he had been prescribed.

A violation of supervised release hearing was held on June 12, 2018. At the hearing, William Burns, a van driver for the RRC where Miller was placed, testified that he took Miller to a pharmacy to fill a prescription for thirty Oxycodone pills. Burns did not accompany Miller inside the pharmacy and waited approximately half an hour for Miller to return to the van with his prescription. Burns then drove Miller directly to the RRC.

Anthony Rodriguez, a manager at the RRC, testified that once Miller returned to the RRC, he collected the Oxycodone and secured it so he alone could access it. Rodriguez did not retrieve the medication until the following morning when Miller requested to take it. After retrieving the medication, Rodriguez and another manager took it to the medication room to be counted and administered. While counting the pills, they discovered that eight pills were missing. Rodriguez immediately reported this finding to his supervisor.

Stacey Cossaboon, the RRC Director, testified that after she was notified about the missing pills, her staff investigated the discrepancy with both Miller and the pharmacy. The pharmacy confirmed that the prescription bottle it provided Miller contained thirty Oxycodone pills. Miller also provided a statement to the RRC denying responsibility for the missing medication. The RRC, however, found Miller responsible for the missing pills and expelled him before he completed his required eight months.

3

Consistent with his statement, at the hearing Miller denied taking the pills and pleaded ignorance. He also confirmed he alone entered the pharmacy to pick up the prescription and admitted to being unable to account for missing narcotics medication earlier in 2018.

On the basis of this evidence, the District Court found by a preponderance of the evidence that Miller violated the condition of his supervised release requiring residence at a re-entry facility. Its finding was premised on the RRC having adequate grounds to remove Miller from its facility because eight Oxycodone pills "went missing" while they were in his "custody and control." App. 87.

## II.

The District Court had jurisdiction under 18 U.S.C. §§ 3231 and 3583(e). We have appellate jurisdiction under 18 U.S.C. § 3742(a) and 28 U.S.C. § 1291. Whether there is sufficient evidence to establish a violation of a condition of supervised release is reviewed for clear error. *United States v. Bagdy*, 764 F.3d 287, 290 (3d Cir. 2014); *United States v. Poellnitz*, 372 F.3d 562, 565 n.6 (3d Cir. 2004).

## III.

Miller contends the District Court erred in finding he was in violation of the terms of his supervised release because the evidence was insufficient to establish he was responsible for the missing pills. He relies on *United States v. Cicirello*, 301 F.3d 135 (3d Cir. 2002), to argue the evidence presented was insufficient. In *Cicirello*, the district court applied a sentencing enhancement "for the transfer of a firearm 'with knowledge, intent or reason to believe that it would be used or possessed in connection with another

4

felony offense'" when the record only showed that a firearm transfer took place and resulted in the defendant receiving a certain amount of money. *Id*. at 137, 141. Based on the evidence presented, however, we found that the Government had failed to show any facts from which an inference could be drawn concerning the defendant's knowledge, intent or reason to believe the guns at issue would be used in connection with another felony. *Id.* at 141-42. We therefore reversed application of the sentencing enhancement. *Id*. at 143.

Unlike in *Cicirello*, the District Court here had sufficient evidence to give rise to the inference that eight Oxycodone pills disappeared while under Miller's custody and control. First, Miller spent approximately thirty minutes alone inside the pharmacy, which had dispensed 30 Oxycodone pills to him. Second, Miller had these pills in his possession from the time he received them until he arrived at the RRC. And third, after Miller arrived at the RRC, Rodriguez retrieved these pills from Miller and secured them until they were counted the following morning. The District Court also heard from Miller and Rodriguez and resolved any inconsistencies between their testimony in the Government's favor. Although there is no direct evidence supporting the finding that the pills disappeared while in Miller's possession, circumstantial evidence is enough to support such an inference. *See United States v. Douglas*, 885 F.3d 145, 151 (3d Cir. 2018) (affirming district court's factual determination based on circumstantial evidence alone). We will therefore affirm the District Court's finding that the eight Oxycodone pills "went missing" while under Miller's "custody and control," App. 87, which was the basis for Miller's removal from the RRC.

IV.

For the foregoing reasons, we will affirm the District Court's judgment that Miller

violated the terms of his supervised release and its sentence.